VENDELA PIROZAK,

        Plaintiff,

v.

MORGAN KNIGHT, *et al.*,

        Defendants.

Case No. 2:19-cv-499
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth Preston Deavers

## OPINION AND ORDER

Currently pending before the Court is Defendant Assistant Prosecutor Jack Felgenhauer's ("Felgenhauer") Motion to Dismiss and Defendant Deputy Morgan Knight's ("Knight") Motion to Partially Dismiss. (ECF No. 7.) Plaintiff Vendela Pirozak ("Plaintiff") responded and Felgenhauer and Knight replied. (ECF Nos. 10, 11.) For the reasons stated herein, Defendants' Motion (ECF No. 7) is **GRANTED in part and DENIED in part**.

### I.

Plaintiff commenced this action on February 14, 2019, by filing a Complaint alleging that Knight and Felgenhauer (collectively "Defendants") violated her rights under the United States' Constitution and Ohio state law. As this matter is before the Court on the Defendants' Motion to Dismiss, the allegations in the Complaint are taken as true and are as follows:

On January 17, 2017, Plaintiff's mother Kenturah Krankovich ("Krankovich") was driving to her and Plaintiff's home in Jewett, Ohio. (Compl. ¶ 1, ECF N o. 1.) Plaintiff, who lived with Krankovich, was a passenger in the vehicle. (*See id.* ¶ 5.) Prior to reaching their home, a marked Harrison County Deputy Sheriff vehicle began to follow them. (*Id.* ¶ 4.) As Krankovich turned

into her driveway, the Deputy Sheriff[1] pulled over the vehicle for suspicion of operating a vehicle while intoxicated. (*Id.* ¶¶ 8–9.) The Deputy Sheriff radioed for assistance and asked Krankovich to step out of the vehicle. (*Id.* ¶ 9.) Krankovich complied and the Deputy Sheriff asked Krankovich to undergo field sobriety tests. (*Id.*) Krankovich performed three separate field tests. (*Id.*) During these field tests another Deputy Sheriff arrived and commented "well, she clearly isn't impaired." (*Id.*)

Plaintiff watched Krankovich complete the field sobriety tests. (*Id.* ¶ 11.) Plaintiff also videoed her mother's interaction with the deputy sheriffs on Plaintiff's cellphone, including Krankovich's eventual arrest for suspicion of operating a motor vehicle while impaired. (*Id.* ¶ 11.)

Days after Krankovich's arrest, Knight called Plaintiff. (*Id.* ¶ 17.) Knight asked whether Plaintiff had recorded Krankovich's completion of the field sobriety tests. (*Id.* ¶ 18.) Plaintiff answered affirmatively and Knight requested that Plaintiff give her cellphone to the Sheriff's Department. (*Id.*) Plaintiff declined to do so and told Knight: "I am retaining my phone and I won't give it to you. . . . [O]nce I make a copy of the video, I will give that to you. Or have my mother's lawyer give it to you." (*Id.* ¶¶ 18–19.)

On February 14, 2017, Plaintiff was at the Harrison County Courthouse in Cadiz, Ohio, for a hearing on an unrelated misdemeanor charge. (*Id.* ¶ 23.) Plaintiff waited outside the presiding judge's courtroom prior to the calling of her case. (*Id* ¶ 24.) At this courthouse, in order to enter a courtroom, individuals must pass through security, including a metal detector. (*Id.* ¶ 26.) Just before Plaintiff's case was called, Plaintiff saw Felgenhauer, a prosecutor, speaking on his cellphone. (*Id.* ¶ 25.) Felgenhauer called Plaintiff's case. (*Id.*) Before she could pass through the courtroom metal detector, Knight approached Plaintiff and asked that Plaintiff give him her

---

[1] Plaintiff is not clear as to whether this was Knight or another deputy sheriff.

cellphone. (*Id.* ¶¶ 25–27.) Plaintiff refused, stating "you can't have it. I will make it available to you later, after my hearing and I make a copy for you." (*Id.* ¶ 28.)

Knight then "forcibly and unprovoked grabbed [] [P]laintiff's arm [and] twisted it . . . behind her back[,] which knocked the Plaintiff off balance and to the ground." (*Id.* ¶ 29.) Next, while plaintiff lay on the floor at the entrance to the metal detector, Knight grabbed Plaintiff's hand in which she was holding her cellphone. (*Id.*) While holding Plaintiff down on the ground, Knight twisted Plaintiff's wrist, forcing her hand to open. (*Id.* ¶ 31.)

During these events, Felgenhauer stood next to Plaintiff and watched as Knight knocked Plaintiff to the ground and took her cellphone. Plaintiff asserts:

> The [p]rosecutor looked upon the events with a certain silent tacit approval, never trying to prevent or say something in response to the actual physical actions taken against the person of the Plaintiff, by Defendant Knight . . . It can be readily inferred, Defendant Assistant Prosecutor clearly had arranged for this confrontation to occur and had literally created the moment and circumstance, by calling the case of the Plaintiff, which alerted the Deputy to come just when the Plaintiff stepped over to the security area in front of the courtroom door.

(*Id.* ¶ 32.)

Plaintiff was deeply embarrassed and shocked and began to cry. (*Id.* ¶ 34.) Next:

> [Plaintiff] was dragged into the little small courtroom, on the floor by her arms, by the local officer and most likely the prosecutor himself. The iPhone itself was taken forcibly from her, stripped of her and its owner and was gone. Then, she was forcibly dragged through the courtroom door, where the security device was located and [into the] courtroom itself which isn't very large but it was public. She wasn't comforted or asked if she needed attention or any [] medical assistance. Nor was she treated with dignity and respect by the Assistant Prosecutor whatsoever at this moment; instead, she was dragged into the courtroom, [through] the entrance and literally into the small inner space of the courtroom itself.

(*Id.* ¶ 34.) Plaintiff claims she "saw the Officer [] rip the phone out of her hands and [] run away, with [it] just as she was being dragged into the courtroom by the assistant prosecutor himself." (*Id.* ¶ 35.)

3

Plaintiff asserts that she was so distraught by these encounters that the presiding judge delayed calling her case, and then eventually continued the hearing to another day. (*Id.* ¶¶ 37, 42.) Plaintiff and Krankovich then went to the Harrison County Sheriff's Office to retrieve her phone. (*Id.* ¶ 43.) Krankovich requested to see a warrant for the cellphone and was told the Sheriff's Office would obtain one "if necessary." (*Id.*) A Deputy Sheriff let Plaintiff see her phone for a short while to retrieve some numbers from it.[2] (*Id.*)

Plaintiff filed a Complaint against Defendants on February 14, 2019. Plaintiff asserts claims against Knight for: (1) violation of her right not to have personal property taken without legal compensation and without due process, her right to privacy, her right to bodily integrity, her right to proper legal process, her right to counsel, her right to trial, and her right not to be assaulted under the Fourteenth Amendment (*id.* ¶ 62.); (2) assault and battery under state law (*id.* ¶ 60); (3) violation of her right to be free from unreasonable searches and seizures under the Fourth Amendment (*id.* ¶ 59); and (4) false imprisonment and use of excessive force under the Fourth Amendment (*id.* ¶ 61).[3]

Plaintiff asserts claims against Felgenhauer for: (1) violation of her right to be free from unreasonable searches and seizures under the Fourth Amendment (*id.* ¶ 59); and (2) use of excessive force under the Fourth Amendment (*id.* ¶ 61). Plaintiff asserts all of the above claims in the Defendants' official and personal capacities. (*Id.* at 1.)

Plaintiff also asserts the following claims against Knight and Felgenhauer on behalf of Krankovich: (1) violation of due process; (2) violation of right to counsel; and (3) violation of right

---

[2] It is not clear from the Complaint whether the phone was ever returned to Plaintiff. Plaintiff argues in her response to the Defendants' Motion to Dismiss that "[t]he authorities still have it, two and a half years later." (Pl.'s Resp. at 12.) This is not alleged in the Complaint.

[3] Plaintiff's Complaint is not entirely clear as to exactly what claims she brings against which Defendant. The Court construes the Complaint liberally, because Plaintiff is pro se, to determine what claims she brings. *Frengler*, 482 F. App'x at 976.

to trial, all under the Fourteenth Amendment. (*Id.* at 19.)

Plaintiff seeks compensatory damages for "the intentional and wanton serious mental and emotional harm, anxiety and intense suffering[,] humiliation[,] and embarrassment . . . " (*Id.* at 20.) Plaintiff also seeks punitive damages, attorney's fees, and costs. (*Id.* at 21–22.)

On June 3, 2019, Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Defendants move to dismiss all claims against them in their official capacities, arguing the claims are barred by sovereign immunity. (Defs.' Mot. Dismiss at 7–8.) Felgenhauer moves to dismiss all claims filed against him in his personal capacity arguing he has absolute immunity. (*Id.* at 4–7.) Felgenhauer also moves to dismiss the claim of the failure to intervene, under Rule 12(b)(6). (*Id.* at 15–16.)

Knight moves to dismiss the claims against him for violations of the rights: not to undergo a taking, to privacy, to bodily integrity, to counsel, to legal process, not to undergo an assault, and to trial, for failure to state a claim upon which relief can be granted. (*Id.* at 8–16.) Knight also claims Plaintiff did not file a claim for assault and battery in violation of state law, and even if Plaintiff did or intends to do so, the claim is time barred. (Defs.' Reply at 3.) Knight does not, however, move to dismiss Plaintiff's claims against him for violation of her right to be free from unreasonable searches and seizures under the Fourth Amendment or for violation of her right to be free from excessive force under the Fourth Amendment. (*Id.* at 7–8.)

Finally, Defendants move to dismiss the claims Plaintiff asserts on behalf of Krankovich for failure to state a claim upon which relief may be granted. (Defs.' Mot. Dismiss at 16–18.)

## II.

Federal Rule of Civil Procedure 12 authorizes dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To meet this standard, the

complaint must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the non-moving party, accepting as true all of plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

Nonetheless, the Court must read Rule 12(b)(6) in conjunction with Federal Rule of Civil Procedure 8(a), requiring a short and plain statement of the claim showing that the plaintiff is entitled to relief. *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 907 (S.D. Ohio 2013). Thus, the pleading's factual allegations, assumed to be true, must do more than create mere speculation or suspicion of a legally cognizable claim; they must show entitlement to relief. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). Further, "the tenet that court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 662. As such, while a plaintiff is not required to set forth detailed factual allegations at the pleading stage, a complaint must contain a basis upon which relief can be granted; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *See id.* at 679; Fed. R. Civ. P. 8(a).

Moreover, courts are called to "liberally construe pro se complaints and hold such complaints to a less stringent standard than pleadings prepared by attorneys." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012) (citing *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). However, such "lenient treatment has limits" and courts "should not have to guess at

the nature of the claim asserted . . . ." *Id.* at 977 (internal quotations omitted).

## III.

Plaintiff brings most of her claims against Defendants under 42 U.S.C. § 1983 alleging Defendants violated various constitutional rights.[4] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To state a claim under Section 1983, a plaintiff must allege: (1) conduct by an individual acting under color of state law; and (2) deprivation of rights secured by the Constitution or laws of the United States. *Day v. Wayne Cty. Bd. of Auditors*, 749 F.2d 1199, 1202 (6th Cir. 1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

### A. Claims Against Defendants in Their Official Capacities

Plaintiff's Complaint states that she is suing Defendants in their official and personal capacities. (Compl. at 2.) Defendants move to dismiss these claims based on sovereign immunity or failure to allege a policy or custom as the moving force behind the deprivations of Plaintiff's rights. (Defs.' Mot. Dismiss at 7–8.) In Plaintiff's response, she contends "at this time, these officials are being sued in their individual capacit[ies]." (Pl.'s Resp. at 10, ECF No. 10.) Plaintiff states she is suing Defendants for "their own actions and/or inactions." (*Id.*) Plaintiff asserts that she did not sue Harrison County and "does not know whether or not the county [] has a pattern and practice of allowing such" behavior. (*Id.*) Later in her response, she states that if Defendants

---

[4] Plaintiff has one claim that she does not bring under § 1983. (Compl. ¶ 60.) Plaintiff claims Knight assaulted her in violation of state law. (*Id.*)

believe Harrison County would condone Defendants' actions then "perhaps the court can entertain a motion to amend at this point and add in the county too." (*Id.* at 12.)

Plaintiff has either abandoned her official capacity claims or did not intend to bring them in the first place. Thus, Defendants' motion to dismiss is GRANTED as to Plaintiff's official capacity claims.

## B. Claims Against Felgenhauer in His Personal Capacity

Felgenhauer moves to dismiss the claims brought against him in his personal capacity. (*See* Defs.' Mot. Dismiss.)

### a. Violation of Fourth and Fourteenth Amendments Right to Be Free from Unreasonable Search and Seizure, and Violation of Fourth and Fourteenth Amendment Right to Be Free from Excessive Force

Felgenhauer argues he is entitled to absolute immunity. (Defs.' Mot. Dismiss at 4.) Plaintiff argues absolute immunity does not apply to any of Felgenhauer's actions because in each action Felgenhauer was acting as a police officer not a prosecutor. (*See* Pl.'s Resp.)

It is well settled that government officials are entitled to some form of immunity from suits for damages. *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). The Supreme Court's decisions have recognized immunity defenses of two kinds—absolute immunity and qualified immunity. *Id.* at 807. Absolute immunity applies to prosecutors being sued for § 1983 claims. *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976). "This protection arises in part from a 'concern that harassment by unfounded litigation would cause deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independent judgment by his public trust.'" *Red Zone 12 LLC v. City of Columbus*, 758 F. App'x 508, 513 (6th Cir. 2019) (citing *Imbler*, 424 U.S. at 423).

Prosecutors are entitled to absolute prosecutorial immunity for conduct that is an "integral part of the judicial process." *Imbler*, 424 U.S. at 430. Courts take a functional approach to determining what conduct is an integral part of the judicial process. *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003); *Forrester v. White*, 484 U.S. 219, 227 (1988) ("It is the nature of the function performed . . . that inform[s] our immunity analysis."); *Rouse v. Stacy*, 478 F. App'x 945, 950 (6th Cir. 2012) ("'[W]e look to the [act's] relation to a general function normally performed by a [prosecutor] to determine the applicability of prosecutorial immunity.") (citing *Mireles v. Waco*, 502 U.S. 9, 13 (1992)).

"The analytical key to prosecutorial immunity . . . is advocacy—whether the actions in question are those of an advocate." *Id.* at 798. The "critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process." *Id.*; *see also Red Zone 12 LLC*, 758 F. App'x at 513 ("The functional approach asks whether the conduct 'was undertaken in connection with one's duties in functioning as a prosecutor.'") (citing *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006)).

In contrast, functions which are "investigative" or "administrative" are protected only by qualified immunity. *Red Zone 12, LLC*, 758 F. App'x at 513; *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) ("[A]bsolute immunity may not apply when a prosecutor is not acting as an officer of the court, but is instead engaged in other tasks, say, investigative or administrative tasks.").

The Sixth Circuit, in explaining the difference between prosecutorial acts and investigative or administrative acts, provided:

> [C]onduct by a prosecutor that is nonetheless investigative or administrative in function includes: "giving legal advice to police," *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003); making "out-of-court statements" at a press conference, *Buckley v. Fitzsimmons*, 509 U.S. 259, 277–78 (1993); making statements "in an affidavit supporting an application for an arrest warrant," *Kalina v. Fletcher*, 522 U.S. 118, 119 (1997); and "authorizing warrantless wiretaps in the

> interest of national security," *Mitchell v. Forsyth*, 472 U.S. 511, 520 (1985). On the other hand, prosecutors have absolute immunity from "suits for malicious prosecution and for defamation, and . . . this immunity extend[s] to the knowing use of false testimony before the grand jury and at trial." *Burns v. Reed*, 500 U.S. 478, 488 (1991). Likewise, they have absolute immunity for the following actions: appearances at probable cause and grand jury hearings, *Spurlock*, 330 F.3d at 797; evaluation of evidence and presentation of that evidence at pre-trial and trial proceedings, *id.*; and preparation of witnesses for trial, *id.*

*Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010).

Importantly, during an inquiry into whether a prosecutor's action is in his capacity as an advocate, "it [is] inappropriate [] to engage in judicial scrutiny of the motives for the prosecutor's action." *Rouse*, 478 F. App'x at 950 (internal citations omitted); *see also Red Zone 12 LLC*, 758 F. App'x at 513 ("Whether the prosecutor has an improper motive, acts in bad faith, or even acts in an unquestionably illegal manner is irrelevant."). During a functional analysis, an act does not become less prosecutorial "by virtue of an allegation of malice or corruption of motive." *Mireles*, 502 U.S. at 13; *see e.g., Cady v. Arenac Cty*, 547 F.3d 334, 341 (6th Cir. 2009) (finding a prosecutor entitled to absolute immunity after presenting false evidence at trial); *Beckett v. Ford*, 384 F. App'x 435, 452 (6th Cir. 2010) (finding a prosecutor entitled to absolute immunity after threatening a witness); *Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986) (finding a prosecutor entitled to absolute immunity after failing to disclose exculpatory information).

"The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).

In determining whether Felgenhauer has absolute immunity from the claims Plaintiff brings against him, the Court must "identify precisely the wrongful acts allegedly performed" and "classify those acts according to their function." *Adams v. Hanson*, 656 F.3d 397, 403 (6th Cir. 2011); *see also Lomaz v. Hennosy*, 151 F.3d 493, 498 (6th Cir. 1998) ("First . . . we must sort out exactly what the challenged actions of the defendants were."). Throughout the Complaint Plaintiff

alleges Felgenhauer: (i) made Knight aware of Plaintiff's misdemeanor hearing through the phone (Compl. ¶¶ 25, 47); (ii) called Plaintiff's misdemeanor case (*id.* ¶ 33); (iii) failed to intervene, or tacitly gave approval, as Knight assaulted Plaintiff and took her cell phone (*id.* ¶¶ 32, 33, 63); and (iv) dragged Plaintiff into the courtroom (*id.* ¶¶ 34, 35, 55).

### i. Making Knight Aware of Plaintiff's Hearing

Plaintiff alleges that Felgenhauer called Knight to make him aware of Plaintiff's misdemeanor hearing. (Compl. ¶¶ 25, 47.) Felgenhauer argues he is absolutely immune from claims arising out of this act because the act was in preparation for the initiation of judicial proceedings against Krankovich. (Defs.' Mot. Dismiss at 6.) Felgenhauer argues this is comparable to the defendant prosecutor's action in *Lomaz*, where a prosecutor prepared and assisted police in executing a search warrant. 151 F.3d at 499. In *Lomaz*, undercover police work had already identified the presence of evidence which was required to initiate a case. *Id.* Thus, the court found "[t]he purpose for which they sought the warrant . . . was not primarily investigative but was to obtain and preserve the evidence." *Id.* Felgenhauer argues the same is true here. Felgenhauer's communication to Knight about Plaintiff's presence in the courthouse was to obtain and preserve evidence, the cell phone.

The Court finds Felgenhauer absolutely immune from liability based on the alleged action of calling Knight to inform him of Plaintiff's misdemeanor case hearing. The Court agrees with Felgenhauer that this situation is factually similar to that of *Lomaz*.[5] *See* 152 F. 3d at 498–99. In fact, Felgenhauer's action was arguably more prosecutorial that the prosecutor in *Lomaz*'s action.

---

[5] The Court notes that the cases are different in that in *Lomaz* the officer was obtaining evidence through a warrant. Here, Plaintiff alleges Knight did not have a warrant. (Compl. ¶ 43.) The Sixth Circuit's focus in *Lomaz*, however, appeared not to be on the warrant, but on the "purpose for which they sought the warrant," which was to "obtain and preserve evidence" for litigation. 151 F. 3d at 499. The purpose of the call to Knight was the same, to obtain and preserve the phone for litigation. Even if obtaining the phone without a warrant was arguably illegal or wrong, this does not prohibit a finding of absolute immunity. *Red Zone 12 LLC*, 758 F. App'x at 513.

In *Lomaz* criminal proceedings had not yet been initiated. 151 F. 3d at 499. Here, criminal proceedings against Krankovich had already begun. Felgenhauer acted as an advocate of the state and thus, is entitled to absolute immunity for claims arising out of this action.

### ii. Calling Plaintiff's Case

Plaintiff alleges Felgenhauer called Plaintiff's misdemeanor case to alert Knight to come find Plaintiff. (Compl. ¶ 33.) Felgenhauer argues that calling a case is acting as an advocate on behalf of the state. (Defs.' Mot. Dismiss at 5–6.) Further, Felgenhauer contends, even if he called this case intending to alert Knight to a chance to seize Plaintiff's cell phone, this does not extinguish his absolute immunity because the Court cannot consider his motive. *See Rouse*, 478 F. App'x at 950; *Red Zone 12 LLC*, 758 F. App'x at 513.

Felgenhauer's argument is well-taken. The calling of Plaintiff's case by a prosecutor is analogous to many of the actions the Sixth Circuit has found fit squarely within the scope of prosecutorial immunity. *See e.g.*, *Spurlock*, 330 F.3d at 797 (appearances at probable cause and grand jury hearings are within the scope of prosecutorial immunity); *Cady*, 574 F.3d at 341 (pretrial negotiations are covered by absolute immunity); *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000) (preparing and filing a nuisance complaint is covered by absolute immunity).

Further, Felgenhauer's motives do not affect whether his action is entitled to absolute immunity. Even if the case was called with an improper motive, calling a case still fits squarely within a prosecutor's role in initiating the case and thus, is entitled to absolute immunity. *Mireles*, 502 U.S. at 13; *Cady*, 547 F.3d at 341; *Beckett*, 384 F. App'x at 452; *Jones*, 800 F.2d at 80. Felgenhauer is entitled to absolute immunity for actions arising out of calling the case.

### iii. Failing to Intervene and Tacit Approval

Throughout the Complaint, Plaintiff alleges Felgenhauer failed to intervene in, and tacitly approved of, Knight's actions. (Compl. ¶¶ 32, 33, 45, 55–58, 63.) Felgenhauer argues he is

entitled to absolutely immunity on claims arising out of failure to intervene for this act was done to further the prosecution of Krankovich. This argument, however, is not what is alleged in the Complaint. Plaintiff alleges that Felgenhauer failed to intervene because he had arranged for the confrontation to occur so that Knight would have the opportunity to assault Plaintiff. (Compl. ¶ 33 ("It can be readily inferred, [Felgenhauer] clearly had arranged for this confrontation to occur and had literally created the moment and the circumstance, by calling the case of the Plaintiff, which alerted [Knight] to come . . .to assault her.").)

The Supreme Court has recognized that some actions are clearly beyond the prosecutor's authority and not entitled to absolute immunity. *Rouse v. Stacy*, 478 F. App'x 945, 951 (6th Cir. 2012) (citing *Spalding v. Vilas*, 161 U.S. 483, 498 (1896)). For example, in *Rouse*, the prosecutor directed an attack on a criminal defendant awaiting trial to persuade him to change his plea to guilty. *Id.* at 946. The Sixth Circuit held the prosecutor was not acting in his legitimate scope of prosecutorial authority, and therefore, had no valid claim to prosecutorial immunity. *Id.* at 953. In so holding, the Sixth Circuit stated "[i]t suffices to recognize the obvious: that ordering a beating is not a function normally performed by a prosecutor." *Id.* at 954. The Court held this was true despite the fact that the ordered beating was intended to influence plea deal negotiations, something normally within the scope of the prosecutor's authority. *Id.* at 954.

Under *Rouse*, arranging for a sheriff to assault a prerson is not within prosecutorial authority, even if the end result, obtaining evidence for prosecution, may be connected to an action normally taken by a prosecutor. Felgenhauer allegedly ordered an assault on Plaintiff just like the prosecutor in *Rouse*. Thus, Felgenhauer is not entitled to absolute immunity for claims arising out of this event.

Defendants argue that, in the alternative, Plaintiff failed to make out a claim for failure to intervene under Rule 12(b)(6) because Felgenhauer had no duty to intervene.

In the Sixth Circuit, "[a]n officer may be liable for failing to prevent an act of excessive force if he or she: (1) observed or had reason to know that excessive force would be or was being used, and (2) has both the opportunity and means to prevent the harm from occurring." *Pennington v. Terry*, 644 F. App'x 533, 547–48 (6th Cir. 2016); *Ontha v. Rutherford Cty., Tenn.*, 222 F. App'x 498, 506 (6th Cir. 2007). The Sixth Circuit has repeatedly held that when an incident lasts a short amount of time it is impractical to expect an officer to have the opportunity and means to prevent the harm from occurring. *See id.* at 548 ("As our case law acknowledges, it is impractical to expect an officer to [realize what another officer intended to do, recognize the action was unconstitutional, develop a plan to prevent the harm, and execute the plan] in less than eight seconds."); *Ontha*, 222 F. App'x at 506 ("[C]ourts have been unwilling to impose a duty to intervene where, as here, an entire incident unfolds in a matter of seconds." (internal citations omitted)); *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) ("[Plaintiffs] failed to demonstrate that the entire incident lasted long enough for [either defendant] to both perceive what was going on and intervene to stop it.").

Defendants argue Plaintiff has not alleged that Felgenhauer knew Knight was going to assault her and had the opportunity and means to prevent it from occurring. Defendants argue specifically, the incident was too short for Felgenhauer to have time to intervene. Plaintiff alleges that Knight's action occurred "without notice or warning [sic] and suddenly," as well as that it occurred "unprovoked." (Compl. ¶ 29.) Plaintiff also alleges, however, that "[i]t can be readily inferred, [Felgenhauer] clearly had arranged for this confrontation to occur and had literally created the moment and the circumstance." (*Id.* ¶ 33.) Thus, Defendants cannot rely on an argument that Felgenhauer did not have the opportunity or means to intervene, for taking the

Complaint as true, Felgenhauer knew the assault coming. Felgenhauer was not just a silent observer of the events but had arranged for them to occur thereby giving himself a duty to protect Plaintiff. *See Burgess*, 753 F.3d at 475 (proceeding with a determination of whether defendants owed plaintiff a duty of care because the defendants had a "mere presence during the altercation, without a showing of some direct responsibility"); *Binay v. Bettendorf*, 601 F.3d 640, 651 (6th Cir. 2010) (finding that while the defendant did not personally participate in the use of excessive force, he was the leader of the group and had ordered the use of force and thus, there was at least a dispute of fact over whether he had direct responsibility).

In sum, Felgenhauer is not absolutely immune from events arising out of his failure to intervene in Knight's alleged assault of Plaintiff and further, Plaintiff has stated a claim upon which relief may be granted on this claim.

### iv. Dragging Plaintiff into the Courtroom

While Felgenhauer argues that all claims against him in his personal capacity should be dismissed due to absolute immunity, Felgenhauer does not address Plaintiff's allegation that he dragged Plaintiff into the courtroom after Knight ran away with her cell phone. (*See* Compl. ¶¶ 34, 35, 55.) As Plaintiff alleges the events, at this point Felgenhauer was not attempting to further any prosecution. There are not allegations that Plaintiff had any evidence relevant to any case on her person at this time. The act cannot be to "obtain and preserve evidence." *Lomaz*, 151 F.3d at 499.

Further, like Felgenhauer's act of failing to intervene in Knight's assault of Plaintiff which he had alleged arrange for, dragging someone across the floor into a courtroom is clearly beyond the scope of any prosecutorial act. *Rouse*, 478 F. App'x at 951. For example, in *Rouse*, the prosecutor directed an attack on a criminal defendant awaiting trial to persuade him to change his plea to guilty. *Id.* at 946. The Sixth Circuit held the prosecutor was not acting in his legitimate

scope of prosecutorial authority, and therefore, had no valid claim to prosecutorial immunity. *Id.* at 953. In so holding, the Sixth Circuit stated "[i]t suffices to recognize the obvious: that ordering a beating is not a function normally performed by a prosecutor." *Id.* at 954. The Court held this was true despite the fact that the ordered beating was intended to influence plea deal negotiations, something normally within the scope of the prosecutor's authority. *Id.* at 954.

In sum, Felgenhauer has absolute immunity from Plaintiff's claims that arise out of calling Knight about Plaintiff's misdemeanor case and calling the misdemeanor case.[6] The motion to dismiss as to claims against Felgenhauer arising out of these actions is thus, GRANTED. Felgenhauer does not, however, have absolute immunity from Plaintiff's claims that arise out of his alleged failure to intervene and dragging Plaintiff into the courtroom. Thus, to the extent that Plaintiff's claims arise out these actions, the motion to dismiss is DENIED.

## C. Claims Against Knight in His Personal Capacity

Knight moves to dismiss the claims brought against him in his personal capacity except the claims for violation of the Fourth Amendment. (*See* Defs.' Mot. Dismiss.)

### a. Violation of Due Process by Taking

Plaintiff claims Knight violated her right not to have her personal property taken without legal compensation under the Due Process Clause when he took her cell phone.[7] (Compl. ¶ 62.)

---

[6] Because the Court finds Felgenhauer immune from actions arising out of this act, the Court need not address Felgenhauer's alternative argument that Plaintiff failed to state a claim upon which relief can be granted for a failure to intervene. (*See* Defs.' Mot. Dismiss at 15.)

[7] Knight argues that because Plaintiff asserts each violation of a right under the Fourteenth Amendment simultaneously as a violation of a right under the Fourth Amendment, each claim should only be considered as part of the general Fourth Amendment claim. (Defs.' Mot. Dismiss at 9–10 (citing *Miller v. City of Columbus*, 920 F. Supp. 807, 816 (S.D. Ohio 1996).) Plaintiff's Complaint, however, is not so clear as to which claims are being brought under which Amendments. The paragraph naming the taking, privacy, bodily integrity, right to counsel, and right to trial violations does not mention the Fourth Amendment. (Compl. ¶ 62.) It does, however, mention "due process." (*Id.*) Thus, in the event Plaintiff intended to bring these claims only under the Fourteenth Amendment, the Court will evaluate them as such. Additionally, Defendant argues each of these claims should be dismissed at the outset because Plaintiff did not sufficiently plead a constitutional right was violated as required for claims under § 1983. (Defs.' Mot. Dismiss at 8–9.) Because Plaintiff is pro se, however, the Court liberally construes the complaint and finds the violations are

16

Knight argues this claim must be dismissed because Plaintiff did not plead that her remedies under Ohio law are inadequate. (Defs.' Mot. Dismiss at 10.)

Claims brought under the substantive due process clause can be brought in two ways. The first is by asserting a denial of a right, privilege or immunity without adequate process. *Miller v. City of Columbus*, 920 F. Supp. 807, 818 (S.D. Ohio 1996). The second is, by asserting a denial of a right, privilege or immunity of the type which cannot be denied regardless of process. *Id.* The Court construes the Complaint as asserting the first type, meaning a denial of procedural due process. (*See* Compl. ¶ 43 ("[t]aking of personal property by officers of the law, without a warrant, or express court order . . . in the manner done here"); ¶ 44 ("Knight did not wait until discovery began"); ¶ 48 ("Knight did not wait until her unrelated hearing was over to gain access to her. He interrupted her entrance into a court of law"); ¶ 50 ("[the cell phone] should have been obtained through formal discovery practices").)

"[A] plaintiff bringing a section 1983 claim [for a taking without adequate process] must allege that the state post-deprivation procedures are inadequate to remedy the deprivation." *Mansfield Apartment Owners Ass'n v. Mansfield*, 988 F.2d 1469, 1476 (6th Cir. 1993); *Miller*, 920 F. Supp. at 807 (citing *Parrat v. Taylor*, 451 U.S. 527 (1981)). *Hilliard v. Walker's Party Store*, 903 F. Supp. 1162, 1177 (E.D. Mich. 1995) ("Merely stating that one has been deprived of a protected interest through an unauthorized government practice is insufficient to state a claim for procedural due process which will provide a remedy for the deprivation.").

Knight argues Plaintiff did not allege that remedies under Ohio law, such as seeking return of her cell phone or obtaining payment for her cell phone, are inadequate. (Defs.' Mot. Dismiss at 10.) The Court agrees. Plaintiff merely states that an interest in her phone was deprived. She

sufficiently plead such that they can be considered to determine whether they state a claim upon which relief may be granted. *Frengler*, 482 F. App'x at 976.

fails to allege that state remedies are inadequate. This requires dismissal of her claim. *See Miller*, 920 F. Supp. at 807; *Hilliard*, 903 F. Supp. at 1177. Plaintiff's procedural due process claim alleging the deprivation of her cell phone is DISMISSED.

The Court notes that Plaintiff also brought a Fourth Amendment right to be free from unreasonable searches and seizures claim regarding the cell phone. This claim is pending as Defendant's have not moved to dismiss it.

### b. Violation of Right to Privacy

Plaintiff alleges Knight violated her right to privacy under the Due Process Clause when he assaulted her and took her cell phone. (Compl. ¶ 62.) Knight argues this claim should be dismissed because Plaintiff did not plead facts which could provide grounds for relief.

"A state actor's violation of an individual's substantive due process right to privacy may give rise to a cognizable § 1983 claim." *Moore v. WesBanco Bank, Co.*, 612 F. App'x 816, 821 (6th Cir. 2015). The substantive due process clause protects two types of privacy rights. *Id.* The first, are "fundamental" privacy rights, which relate to an individual's right to make personal decisions relating to marriage, procreation, contraception, family relationships, and child rearing. *Id.*; *Laurence v. Texas*, 539 U.S. 558 (2003). The second are "informational" privacy rights, which relate to an individual's interest in avoiding disclosure of personal matters. *Id.*; *Lambert v. Hartman*, 517 F.3d 443, 440 (6th Cir. 2008).

Plaintiff fails to respond to Defendant's motion to dismiss this claim. As such, Plaintiff waives opposition to dismissal. *Conrad v. Bank Nat'l Ass'n*, 391 F. Supp. 3d 780, 791–92 (S.D. Ohio June 19, 2019) ("[The plaintiff] does not refute [the defendant's] characterization of [the claim], nor does [the plaintiff] respond in any way to [the defendant's] argument that this claim should be dismissed. Thus, [the plaintiff] appears to concede this point and waives opposition to

dismissal of this claim); *see also Woods v. U.S. Bank Nat'l Ass'n*, No. 517CV2234, 2019 U.S. Dist. LEXIS 44901, at *6–7 (N.D. Ohio Mar. 19, 2019) ("A party waives opposition to an argument by failing to address it in her responsive brief . . . the [c]ourt is not required to consider the[] merits and may grant judgment in [the moving party's] favor."); *Ohio Star Transp., LLC v. Roadway Express, Inc.*, No. 2:09-cv-261, 2010 U.S. Dist. LEXIS 95764, at *10 (S.D. Ohio Sept. 14, 2010) ("[The defendant] raises this argument, but [the plaintiff] does not respond, thereby waiving its ability to challenge the argument and effectively conceding the point.").

Even if Plaintiff had opposed this argument, Knight's arguments are well-taken. Plaintiff does not plead any facts that could provide relief for an invasion of a fundamental privacy right or an informational privacy right. This claim is DISMISSED.

### c. Violation of Right to Bodily Integrity

Plaintiff alleges Knight violated her right to bodily integrity under the Due Process Clause when he assaulted her and took her cell phone. (Compl. ¶ 62.) Defendant argues Plaintiff's allegations of physical contact are not enough for a claim of a violation of her bodily integrity.

The Supreme Court recognizes a substantive due process right to bodily integrity, which, generally has been employed to protect against "nonconsensual intrusions into one's body." *Planned Parenthood Sw. Ohio Region v. Dewine*, No. 1:04-cv-493, 2011 U.S. Dist. LEXIS 156366, at *35 (S.D. Ohio May 23, 2011); *see also Missouri v. Mcneely*, 569 U.S. 141, 159 (2013) ("We have never retreated . . . from our recognition that any compelled intrusion into the human body implicates significant, constitutionally protected . . . interests."); *see e.g., Rochin v. California*, 342 U.S. 165 (1952) (finding police violated a detainee's bodily integrity when they ordered doctors to pump his stomach to obtain evidence of drugs); *Winston v. Lee*, 470 U.S. 753 (1985) (holding surgical removal of potential evidence from an individual's body without individual's consent is an unconstitutional intrusion upon bodily integrity). The Sixth Circuit

"use[s] the 'shocks the conscience' rubric to evaluate intrusions into a person's right to bodily integrity." *Guertin v. Michigan*, 912 F.2d 907, 922 (6th Cir. 2019). "[T]he shocks-the-conscience test is the way in which courts prevent transforming run-of-the-mill tort claims into violations of constitutional guarantees." *Id.*

Plaintiff does not respond to this argument in her response, and as such, waives opposition to dismissal on these grounds. *Conrad*, 391 F. Supp. 3d at 791–92; *see also Woods*, 2019 U.S. Dist. LEXIS 4490 at *6–7; *Ohio Star Transp., LLC*, 2010 U.S. Dist. LEXIS 95764 at *10.

Even if Plaintiff had not waived opposition to dismissal, the Court agrees with Knight. This bodily contact, alleged as pushing plaintiff down and twisting her wrist, while not decent, is not the type of behavior which shocks the conscience. There was no intrusion into her body, and the contact did not cause lasting harm or death. This claim is DISMISSED.

The Court notes that Plaintiff also brought a Fourth Amendment right to be free from un excessive force claim regarding this assault. This claim is pending as Defendant's have not moved to dismiss it.

### d. Violation of Right to Counsel

Plaintiff alleges Knight violated her right to counsel. (Compl. ¶ 62.) Defendant argues Plaintiff pleads no facts which could provide relief on this claim. (Defs.' Mot. Dismiss at 13.)

At a minimum, "[i]n order to state a § 1983 cognizable claim for deprivation of right to counsel, there must be some allegation indicating an interference with the [plaintiff's] relationship with counsel." *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010).

Plaintiff does not respond to this argument in her response, and as such, waives opposition to dismissal on these grounds. *Conrad*, 391 F. Supp. 3d at 791–92; *see also Woods*, 2019 U.S. Dist. LEXIS 4490 at *6–7; *Ohio Star Transp., LLC*, 2010 U.S. Dist. LEXIS 95764 at *10.

Regardless, the Court agrees with Defendant. Plaintiff does not plead any facts which could make up an interference with her relationship with counsel. It is unclear whether at this time Plaintiff had or sought to get counsel. This claim is insufficiently plead even with the liberal interpretations of pleadings for pro se plaintiffs. The claim is DISMISSED.

### e. Violation of Right to Legal Process

Plaintiff alleges Knight violated her right to legal process. (Compl. ¶ 51.) Knight argues Plaintiff plead no facts which could provide relief on this claim. (Defs.' Mot. Dismiss at 13.)

Plaintiff does not respond to this argument in her response, and as such, waives opposition to dismissal on these grounds. *Conrad*, 391 F. Supp. 3d at 791–92; *see also Woods*, 2019 U.S. Dist. LEXIS 4490 at *6–7; *Ohio Star Transp., LLC*, 2010 U.S. Dist. LEXIS 95764 at *10. Regardless, Plaintiff's pleading on this claim, if she intends this to be a claim, is insufficient. Plaintiff states in the "background and history of case pertinent facts" section of her Complaint that "a clear physical unwarranted illegal assault . . . [is] a violation of the Plaintiff's right to counsel and right to proper legal process." (Compl. ¶51.) She never mentions this claim again, however, and does not state it in the section labeled "constitutional and state claims." (Compl. at 16.) This claim is insufficiently plead even with the liberal interpretations of pleading for pro se plaintiffs. The claim is DISMISSED.

### f. Violation of Due Process by Assault

Plaintiff alleges Knight violated her right to due process when he assaulted her. (Compl. ¶ 51.) Defendant argues this claim fails because assault claims must be brought under the Fourth Amendment. (Defs.' Mot. Dismiss at 13.)

The Supreme Court provided that "*all* claims that law enforcement officers have used excessive force . . . in the course of . . . [a] 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process'

approach. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Accordingly, Plaintiff's claim of excessive force shall be analyzed under her Fourth Amendment excessive force claim, which Knight as not moved to dismiss. Plaintiff's claim of excessive force under the Fourteenth Amendment is DISMISSED.

### g. Violation of Right to Trial

Plaintiff alleges Knight violated her right to trial under the Due Process Clause. (Compl. ¶ 62.) Knight argues this nonspecific claim needs dismissed for failure to state a claim. (Defs.' Mot. Dismiss at 14.)

The right to access courts is a fundamental right protected by the Constitution.[8] *Swekel v. City of River Rouge*, 119 F.3d 1259, 1261 (6th Cir. 1997); *Chambers v. Baltimore & Ohio Railroad*, 207 U.S. 142 (1907). This right protects a person's ability to physically access the court system as well as require that such access is adequate, effective, and meaningful. *Id.*; *see also Wolff v. McDonnell*, 418 U.S. 539 (1974) (describing the right in the § 1983 context as assuring no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights). In evaluating an access to courts claim, courts should consider whether the action complained of was pre or post-filing. *Id.* A complaint about an action post-filing will normally not be a viable claim. *Id.* A complaint about an action pre-filing requires a court to consider whether the defendants' action foreclosed the plaintiff from filing suit. *Id.* at 1263–64; *see also Fisher v. City of Cincinnati*, 753 F. Supp. 681, 687 (S.D. Ohio 1990) (plaintiffs must show the interference was potential prejudicial to the right of access to redress).

Plaintiff does not respond to this argument, and as such, waives opposition to dismissal on these grounds. *Conrad*, 391 F. Supp. 3d at 791–92; *see also Woods*, 2019 U.S. Dist. LEXIS 4490

---

[8] Plaintiff appears to be claiming lack of access to the courts, not a violation of the right to trial by jury, as she never speaks about a jury. Instead she claims Knight "interrupted her entrance into a court of law." (Compl. ¶ 48.)

at *6–7; *Ohio Star Transp., LLC*, 2010 U.S. Dist. LEXIS 95764 at *10. Regardless, Plaintiff provides no facts which could provide a claim she was denied access to the courts. She alleges her misdemeanor hearing was continued because she was upset after the events. (Compl. ¶ 42.) She does not allege, however, that she was prevented from filing a complaint, or otherwise utilizing the courts. As such, this claim is DISMISSED.

### h. Assault & Battery in Violation of State Law

Plaintiff asserts in her response that she intended her assault claims to be brought under both federal law as well as state law. (Pl.'s Resp. at 22.) In the alternative, Plaintiff asks for leave to amend her Complaint to include state law assault and battery claims. (*Id.*) Knight, in Defendants' reply, asserts that Plaintiff's Complaint alleges no claim for assault and battery under state law, and, any amendment would be futile due to Ohio law requiring assault claims to be brought within one year. (Defs.' Reply at 3.)

The Court finds Plaintiff has stated a state assault and battery claim. In Plaintiff's Complaint, she titles a heading "Constitutional and State Claims." (Compl. at 16.) In a following paragraph she states "the actions of [] Knight on the date in question as alleged herein, constituted . . . an assault and battery against her person and body by his physical assault and twisting and bending back of her arm and wrist . . ." (*Id.* at 60.) Unlike the paragraphs surrounding this one, which mention the Constitution, this paragraph does not mention the Constitution. (*See id.*) In construing this Complaint with the leniency granted to pro se plaintiffs, the Court finds this is a claim for state law assault and battery. *See Frengler*, 482 F. App'x at 976.

The Court is empowered to dismiss a claim "sua sponte on statute of limitations grounds when it is apparent from the face of the complaint that the claim[] [is] time-barred." *Meros v. Dimon*, No. 2:17-cv-103, 2017 U.S. Dist. LEXIS 209163, at *18 n. 4 (S.D. Ohio Dec. 20, 2017); *Alston v. Tennessee Dep't of Corr.*, 28 F. App'x 475, 476 (6th Cir. 2002) ("Because the statute of

limitations defect was obvious from the face of the complaint, sua sponte dismissal of the complaint was appropriate.").

"[A]n action for assault or battery shall be brought within one year after the cause of action accrues." OHIO REV. CODE § 2305.111(B). The action accrues on the date "which the alleged assault or battery occurred." *Id.* § 2305111(B)(1). The face of Plaintiff's Complaint is clear, this alleged assault took place on February 14, 2017. (Compl. ¶ 23.) Thus, Plaintiff had to bring her claim by February 14, 2018. *See* OHIO REV. CODE § 2305.111(B). Plaintiff filed her Complaint on February 14, 2019. This claim is time-barred and thus, is DISMISSED.

## D. Claims Against Defendants Asserted on Behalf of Krankovich

Plaintiff brought several claims against Defendants on Krankovich's behalf. Defendants move to dismiss these claims arguing that Plaintiff failed to include Krankovich in this action in accordance with Federal Rule of Civil Procedure 10(a) and cannot bring a claim on her behalf. (Defs.' Mot. Dismiss at 16–17.)

"Ordinarily, one may not claim standing in this [c]ourt to vindicate the constitutional rights of some third party." *Barrows v. Jackson*, 346 U.S. 249, 255 (1953). The Supreme Court has observed, however, "that its salutary rule against third-party standing is not absolute." *Smith v. Jefferson Cty Bd. Sch. Comm'rs*, 641 F.3d 197, 207 (6th Cir. 2011) (citing *Kowalski v. Tesmer*, 543 U.S. 125 (2004)). Importantly for this case, in order to assert a claim on behalf of another person there must be a "hinderance" to the third-party's "ability to protect his own interests." *Kowalski*, 543 U.S. at 130; *Smith*, 641 F.3d at 208–09 (finding no third-party standing because there was "no indication that the [third-parties] face[d] any obstacle in litigating their rights themselves").

Plaintiff does not respond to Knight's motion to dismiss the claims brought on behalf of Krankovich and as such, waives opposition to dismissal of the claims. *Conrad*, 391 F. Supp. 3d at 791–92; *see also Woods*, 2019 U.S. Dist. LEXIS 4490 at \*6–7; *Ohio Star Transp., LLC*, 2010 U.S. Dist. LEXIS 95764 at \*10. Regardless, Plaintiff has not alleged any obstacle Krankovich may have in litigating her rights herself. Thus, the Court finds Plaintiff does not have standing to sue on Krankovich's behalf and these claims are DISMISSED.

### IV.

For the reasons set forth above, the Court **GRANTS in part and DENIES in part** Defendants' Motion to Dismiss (ECF No. 7).

**IT IS SO ORDERED.**

3-18-2020
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**